BAGLEY ACQUISITION CORPORATION v DETROIT EDISON COMPANY

Docket No. 197628. Submitted January 13, 1998, at Lansing. Decided April 3, 1998, at 9:10 A.M. Leave to appeal sought.

   Bagley Acquisition Corporation filed a complaint in the Public Service Commission against Detroit Edison Company, alleging that Edison's practice of entering into special payment plans with commercial building owners who are in arrears on their electric bills discriminates against those who pay their bills on time and violates MCL 460.557(4); MSA 22.157(4). Following a hearing, the commission dismissed the complaint. Bagley Acquisition appealed.

   The Court of Appeals *held*:

   The statute at issue prohibits an electric utility from charging similarly situated customers different rates. Although allowing some customers, but not others, discounts on unpaid bills would violate the statute, that was not Edison's practice. Under its special payment plans, Edison sought collection of the unpaid amounts in full and therefore did not charge a different rate for those in the special payment plans.

   Affirmed.

1. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION ORDERS — JUDICIAL REVIEW.

   All rates, fares, charges, classifications, regulations, practices, and services prescribed by the Public Service Commission are presumed to be prima facie lawful and reasonable; a party aggrieved by an order of the commission bears the burden of proving by clear and convincing evidence that the order is unlawful or unreasonable; a reviewing court gives due deference to the administrative expertise of the commission and does not substitute its judgment for that of the commission (MCL 462.25, 462.26[8]; MSA 22.44, 22.45[8]).

2. PUBLIC UTILITIES — NONDISCRIMINATORY ELECTRICAL RATES — SPECIAL PAYMENT PLANS FOR OVERDUE BILLS.

   A special payment plan made available by an electric utility to customers with overdue bills does not violate the statutory prohibition against discriminatory rates where full payment of amounts owed are sought under the plan (MCL 460.557[4]; MSA 22.157[4]).

*Fraser Trebilcock Davis & Foster, P.C.* (by *David E. S. Marvin* and *Brian D. Herrington*), for Bagley Acquisition Corporation.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Don L. Keskey* and *Patricia S. Barone,* Assistant Attorneys General, for Public Service Commission.

*Jon P. Christinidis,* for Detroit Edison Company.

Before: MACKENZIE, P.J., and HOLBROOK, JR., and SAAD, JJ.

SAAD, J. Appellant Bagley Acquisition Corporation (BAC) contends that the use of payment plans by Detroit Edison Company (Edison) for office building owners who do not pay their bills in a timely manner constitutes impermissible rate discrimination against building owners who pay their bills on time. Following a hearing, the Public Service Commission (PSC) dismissed BAC's complaint. We affirm.

I

BACKGROUND

BAC owns and operates the Michigan Building in downtown Detroit. On June 5, 1995, BAC filed a complaint with the PSC against Edison, asserting that Edison arbitrarily extended credit to certain commercial property owners and selectively entered into repayment plans rather than shutting off service. BAC contended that Edison should terminate service if a landowner is ten days late in making payment.

At the hearing, Anthony V. Pieroni, BAC's president, testified about a bill for $100,000 owed on the David Stott Building, and about other bills owed on the

Book Building. Pieroni also testified that 220 Bagley, Inc. (the previous owner of the Michigan Building), incurred in excess of $200,000 in electric bills that were never paid.

Edison's manager of customer services testified that Edison entered into special payment arrangements with certain buildings when it might otherwise have no recovery at all. He testified that it is very difficult to deny service under commission rules when a corporation changes its name. He also testified that no rule requires Edison to shut off service and that payment arrangements are offered to commercial customers only after they have experienced payment problems.

The PSC opinion and order dismissed BAC's complaint, finding that it was based on a misinterpretation of the relevant statute. BAC's motion to reopen the record to admit evidence of additional arrearages was denied, because the PSC did not believe that the evidence sought would affect the outcome.

II

ANALYSIS

The standard of review for PSC orders is narrow and well established. Pursuant to MCL 462.25; MSA 22.44, all rates, fares, charges, classifications, regulations, practices, and services prescribed by the PSC are presumed to be prima facie lawful and reasonable. A party aggrieved by an order of the PSC bears the burden of proving by clear and convincing evidence that the order is unlawful or unreasonable. MCL 462.26(8); MSA 22.45(8). A reviewing court gives due deference to the administrative expertise of the PSC and is not to substitute its judgment for that of the PSC. *Marshall v*

*Consumers Power Co (On Remand)*, 206 Mich App
666, 676-677; 523 NW2d 483 (1994).
MCL 460.557(4); MSA 22.157(4) provides:

> The rates of an electric utility shall be just and reasona-
> ble and a consumer shall not be charged more or less than
> other consumers are charged for like contemporaneous ser-
> vice rendered under similar circumstances and conditions.
> If an electric utility doing business within this state . . .
> charges . . . or receives . . . a greater or lesser compensation
> for a service rendered than the electric utility charges,
> demands, collects, or receives from any other person, part-
> nership, or corporation for rendering a like contemporane-
> ous service, the electric company is guilty of unjust discrim-
> ination which is hereby prohibited and declared to be
> unlawful. In addition, a person, partnership, or corporation
> shall not . . . ask, demand, or accept a rebate, draw-back, or
> other device by which the person, partnership, or corpora-
> tion shall obtain electric service for a rate less than that
> charged others in like circumstances.

There is no Michigan case law construing this por-
tion of the statute in a context similar to that
presented here. The statute clearly prohibits charging
similarly situated customers different rates. Cf. *Attor-
ney General v Public Service Comm*, 141 Mich App
505, 508-509; 367 NW2d 341 (1984) (not unlawful dis-
crimination to charge different rates for "principal"
residence and "alternate" residence). Allowing some
customers discounts on unpaid bills, while denying
that discount to other customers would violate the
statute. However, there is no showing that this is
Edison's practice. Indeed, Edison's manager of cus-
tomer services testified that the company does not
knowingly enter into a payment arrangement that
does not include payment or expected payment of the
total amount owing. Because bills are sent only after
the electricity has already been used, and notice pro-

visions must be complied with, it may take 105 to 115 days before service could be cut off to a nonpaying customer. PSC rules require that reasonable attempts to effect collection be made before initiating a cutoff. Customers are all charged the same rates, and, in fact, Edison may collect more from customers on payment plans because of late charges. This testimony shows that the use of payment programs is intended not to favor certain customers, but to maintain the rate base, favoring all customers.

BAC has failed to acknowledge that under its theory, any customer's failure to pay a bill results in a net payment of a different rate. If a commercial building does not pay its bill and service is cut off, it would have been provided a discriminatory rate if the bill is never paid. Thus, BAC's proposed solution of cutting off power after a bill is ten days overdue does not solve the purported rate discrimination problem. The PSC interpreted MCL 460.557(4); MSA 22.157(4) to permit utilities to develop and implement reasonable collection practices that apply equally to all customers. We defer to its findings that Edison's practices were reasonable and that BAC's claims therefore should be rejected.[1]

Affirmed.

---

[1] BAC also argues that the PSC erred in denying BAC's motion to reopen the proceedings to admit additional evidence regarding other arrearages that was not disclosed by Edison. At the pretrial conference, Edison objected to producing information that would disclose the identity of its customers. In response, BAC stated that it did not need any more documents from Edison. The parties acknowledged that the information provided to BAC was not an exhaustive list of all arrearages. By failing to pursue further discovery below, BAC failed to preserve this issue for review. See *Harville v State Plumbing & Heating*, 218 Mich App 302, 323-324; 553 NW2d 377 (1996) (error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence).