ATTORNEY GENERAL v MICHIGAN PUBLIC SERVICE COMMISSION
ASSOCIATION OF BUSINESSES ADVOCATING TARIFF EQUITY v
MICHIGAN PUBLIC SERVICE COMMISSION
RESIDENTIAL RATEPAYER CONSORTIUM v MICHIGAN PUBLIC
SERVICE COMMISSION

Docket Nos. 228484, 228485, 228522, 228523, 228622, 228623. Submitted
January 8, 2002, at Lansing. Decided January 29, 2002, at 9:10 A.M.
Leave to appeal sought.

The Michigan Public Service Commission (MPSC) on its own motion
and without notice or a hearing issued orders dismissing with
prejudice applications by the Detroit Edison Company for a power
supply cost reconciliation for 1999 (MPSC Case No. U-11800-R) and
to implement a power supply cost recovery (PSCR) plan for 2000
(MPSC Case No. U-12121). The dismissals were ordered pursuant
to subsection 10d(1) of the Customer Choice and Electricity Relia-
bility Act, 2000 PA 141, MCL 460.10d(1), which froze residential and
nonresidential rates authorized or in effect on May 1, 2000, until
December 31, 2003. Separate appeals from the orders were brought
by the Attorney General, the Association of Businesses Advocating
Tariff Equity, and the Residential Ratepayer Consortium. The
appeals were consolidated.

The Court of Appeals *held*:

1. The plain language of subsection 10d(1) precludes any adjust-
ment of rates beyond the terms of Act 141. The statutory language
provides that "[n]othwithstanding any other provision of law or
commission order, rates . . . established under this subsection
become effective on [June 5, 2000] and remain in effect until
December 31, 2003." The phrase "any other provision of law"
plainly includes the PSCR reconciliation and plan provisions of MCL
460.6j and "any other . . . commission order" plainly includes orders
issued pursuant to MCL 460.6j or prior MPSC-approved agreements
whereby a utility has agreed to make future rate adjustments.

2. The MPSC had discretion to suspend implementation of a 1999
PSCR clause that would have had the effect of adjusting electric
rates in contravention of Act 141.

3. Act 141 does not impliedly repeal the provisions in MCL 460.6j
regarding PSCR reconciliation and plan proceedings, but suspends
its operation for a specified period. The MPSC reasonably construed

the PSCR clause adjustments sought during the rate freeze period to be inconsistent with subsection 10d(1).

4. There were no contract rights implicated in this matter and, therefore, no impairment of contract rights. The appellants did not have any vested right to a refund or a credit.

Affirmed.

*Jennifer M. Granholm*, Attorney General, *Susan I. Leffler*, Assistant Solicitor General, *J. Peter Lark*, Assistant in Charge, and *Donald E. Erickson*, Assistant Attorney General, for the Attorney General.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *David A. Voges*, *Steven D. Hughey*, and *Patricia S. Barone*, Assistant Attorneys General, for the Michigan Public Service Commission.

*Foster, Swift, Collins & Smith, P.C.* (by *William K. Fahey* and *Stephen J. Rhodes*), and *Bruce R. Maters* and *Jon P. Christinides*, for the Detroit Edison Company.

*Clark Hill P.L.C.* (by *Robert A. W. Strong*), for the Association of Businesses Advocating Tariff Equity.

*Shaltz & Royal, P.C.* (by *Diane R. Royal*), for Residential Ratepayer Consortium.

Before: FITZGERALD, P.J., and BANDSTRA and K. F. KELLY, JJ.

K. F. KELLY, J. On June 19, 2000, the Michigan Public Service Commission (MPSC) issued two orders, on its own motion and without notice or a hearing, dismissing with prejudice the Detroit Edison Company's application for a power supply cost reconciliation for 1999 (MPSC Case No. U-11800-R) and its application to implement a power supply cost recovery (PSCR)

plan for 2000 (MPSC Case No. U-12121). The dismissals were ordered pursuant to subsection 10d(1) of the Customer Choice and Electricity Reliability Act, 2000 PA 141, MCL 460.10 *et seq.* (Act 141), which froze residential and nonresidential electric rates authorized or in effect on May 1, 2000, until December 31, 2003. Separate appeals as of right were filed from the two orders by the Attorney General (Docket Nos. 228484 and 228485), the Association of Businesses Advocating Tariff Equity (ABATE) (Docket Nos. 228522 and 228523), and the Residential Ratepayer Consortium (RRC) (Docket Nos. 228622 and 228623). This Court ordered the appeals consolidated. We now affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

As part of the Legislature's decision to deregulate the electric utility industry, it enacted Act 141, which provides in subsection 10d(1):

> Unless otherwise reduced by the commission under subsection (4) [involving securitization financing], the commission shall establish the residential rates for each electric utility with 1,000,000 or more retail customers in this state as of May 1, 2000 that will result in a 5% rate reduction from the rates that were authorized or in effect on May 1, 2000. Notwithstanding any other provision of law or commission order, rates for each electric utility with 1,000,000 or more retail customers established under this subsection become effective on the effective date of the amendatory act that added this section and remain in effect until December 31, 2003 and all other electric retail rates of an electric utility with 1,000,000 or more retail customers authorized or in effect as of May 1, 2000 shall remain in effect until December 31, 2003, unless otherwise reduced by the commission under subsection (4). [MCL 460.10d(1).]

Thus, Act 141 mandated that residential electric rates authorized or in effect on May 1, 2000, be reduced by five percent and remain frozen until December 31, 2003, and that nonresidential rates authorized or in effect on May 1, 2000, also be frozen until December 31, 2003.

At the time Act 141 became effective, June 5, 2000, Edison's 1999 PSCR reconciliation application was pending in the MPSC pursuant to MCL 460.6j(12)-(16) [MPSC Case No. U-11800-R]. In its application, Edison attached an exhibit asserting that the utility had an overrecovery for the year of more than $13 million, requiring a refund to customers. Edison's exhibit further indicated a refundable $18.9 million in Fermi 2 capacity performance standard amounts, which were based on a 1988 MPSC-approved stipulation and settlement agreement entered into between Edison and certain customers, including ABATE, in MPSC Case No. U-8789. In the settlement agreement, Edison had agreed as follows:

> For rates in effect from January 1, 1993 through December 31, 2003, a disallowance will be imposed upon the Company for the amount by which the three-year rolling average capacity factor for Fermi 2 is less than the greater of either the simple average capacity factor of the top 50% of U.S. boiling water reactors or 50%.
>
> *        *        *
>
> The annual performance standard disallowance shall be the net incremental cost of replacement power (including capacity and associated energy).

Also pending at the time Act 141 became effective was Edison's application to implement a PSCR plan for 2000 pursuant to MCL 460.6j(3)–(7) [MPSC Case No. U-12121].

On June 19, 2000, acting on its own motion and without notice or a hearing, the MPSC ordered Edison's reconciliation application in MPSC Case No. U-11800-R "dismissed with prejudice":

> On June 5, 2000, the Commission issued an order in Case No. U-12464 implementing the rate reduction for residential customers and requiring Detroit Edison to file tariff sheets. With that reduction, all of the retail rates now in effect may not be changed until at least December 31, 2003 except to reflect the effects of securitization. A PSCR reconciliation, which is designed to adjust rates for an over- or under-recovery of the costs of fuel and purchased power, is inconsistent with subsection 10d(1). Therefore, Detroit Edison's application must be dismissed.

On that same date, the MPSC issued another order dismissing with prejudice Edison's 2000 PSCR plan application in MPSC Case No. U-12121, citing the same rationale as above.

II

On appeal, appellants contend that the MPSC's interpretation of subsection 10d(1) of Act 141 is unlawful. We disagree.

A. STANDARD OF REVIEW

Pursuant to MCL 462.25, all rates, fares, practices, and services prescribed by the MPSC are presumed, prima facie, to be lawful and reasonable. *Michigan Consolidated Gas Co v Public Service Comm*, 389 Mich 624; 209 NW2d 210 (1973); *Attorney General v Public Service Comm*, 206 Mich App 290, 294; 520 NW2d 636 (1994). An appellant must show by "clear and satisfactory evidence" that a challenged order of the MPSC is "unlawful or unreasonable." MCL

462.26(8); *Michigan Consolidated Gas Co, supra* at 639; *CMS Energy Corp v Attorney General,* 190 Mich App 220, 228; 475 NW2d 451 (1991); *Attorney General, supra,* 206 Mich App 294. An MPSC order is unlawful if it is based on an erroneous interpretation or application of the law, and it is unreasonable if it is not supported by the evidence. *Associated Truck Lines, Inc v Public Service Comm,* 377 Mich 259; 140 NW2d 515 (1966); *Attorney General v Public Service Comm,* 231 Mich App 76, 77-78; 585 NW2d 310 (1998). While a reviewing court must give due deference to the administrative expertise of the MPSC and may not substitute its judgment for that of the agency, the judiciary may not abandon or delegate its duty to interpret statutory language and legislative intent. *Attorney General v Public Service Comm,* 244 Mich App 401, 406; 625 NW2d 786 (2001).

Questions of statutory interpretation are questions of law, which are reviewed de novo. *In re MCI Telecommunications Complaint,* 460 Mich 396, 413; 596 NW2d 164 (1999); *Attorney General v Public Service Comm,* 247 Mich App 35, 39; 634 NW2d 710 (2001).

B

In dismissing with prejudice Edison's pending 1999 PSCR reconciliation application and 2000 PSCR plan application cases, the MPSC construed the rate freeze provision of subsection 10d(1) as temporarily supplanting MCL 460.6j pursuant to which PSCR reconciliation and plan proceedings are conducted. Affirmance is warranted on various grounds.

### 1. THE PLAIN LANGUAGE OF THE STATUTE

Appellees MPSC and Edison persuasively assert that the rate freeze under subsection 10d(1) precludes any adjustment of rates beyond the terms of Act 141 in light of the plain statutory language, i.e., "[n]otwithstanding any other provision of law or commission order, rates . . . established under this subsection become effective on the effective date of the amendatory act that added this section and remain in effect until December 31, 2003 . . . ." "[A]ny other provision of law" plainly includes the PSCR reconciliation and plan provisions of MCL 460.6j, and "any other . . . commission order" plainly includes orders issued pursuant to MCL 460.6j or prior MPSC-approved agreements whereby a utility has agreed to make future rate adjustments. Thus, the MPSC's interpretation of the statute is entitled to deference because it is consistent with the plain language of the statute. *Attorney General, supra,* 247 Mich App 41. Moreover, because the dismissal orders are not clearly based on an erroneous interpretation or application of the law, appellants have failed to overcome the presumption of lawfulness. MCL 462.25; *Associated Truck Lines, Inc, supra; Attorney General, supra,* 231 Mich App 77-78.

### 2. THE MPSC HAS AUTHORITY TO SUSPEND A K CLAUSE

A PSCR clause is "a clause in the electric rates or rate schedule of a utility which permits the monthly adjustment of rates," and a PSCR factor is an "element" of electric rates. MCL 460.6j(1)(a), (b). "Pursuant to its authority under this act, the public service commission may incorporate a power supply cost recov-

ery clause in the electric rates or rate schedule of a utility, but is not required to do so." MCL 460.6j(2). As a corollary to this discretionary authority, this Court has held that the MPSC has the authority to suspend an electric utility's PSCR clause for a specified period as long as the suspension will not result in an increase in rates. *Attorney General, supra,* 231 Mich App 79-80; *Attorney General, supra,* 244 Mich App 406. See also *Residential Ratepayer Consortium v Public Service Comm,* 239 Mich App 1, 4-5; 607 NW2d 391 (1999) (suspension authority applies also to gas cost recovery clauses).

Here, viewing, as this Court must, the MPSC's orders as prima facie lawful and reasonable, the MPSC had discretion whether to impose a 1999 PSCR clause in the first place or to suspend operation of a clause that had already been imposed. Thus, in light of the rate freeze mandated under subsection 10d(1), the MPSC properly exercised its discretion to suspend implementation of a PSCR clause that would have had the effect of adjusting electric rates, in direct contravention of the freeze.

Appellants contend that the MPSC's interpretation of subsection 10d(1) operates to retroactively change or modify rates in effect before the effective date of Act 141, June 5, 2000. Appellants note that statutes are generally viewed as having only prospective application, unless the Legislature has clearly indicated an intent for retroactive application, and no such intent is indicated in Act 141. The flaw in this argument, as pointed out by appellees, is that rate-making orders are prospective in effect. *Michigan Bell Telephone Co v Public Service Comm,* 315 Mich 533, 547; 24 NW2d 200 (1946); *Detroit Edison Co v Public Service Comm,* 221 Mich App 370, 376; 562 NW2d 224 (1997).

Therefore, by suspending implementation of pending PSCR proceedings, the MPSC was merely complying with the dictates of subsection 10d(1) that precluded adjustment of the frozen rates for the specified period.

Appellants further paint the MPSC's action as a repeal of MCL 460.6j by implication and contend that such a construction should be disfavored by the courts. " 'Repeals by implication are not favored and will not be indulged in if there is any other reasonable construction. The intent to repeal must very clearly appear, and courts will not hold to a repeal if they can find reasonable ground to hold the contrary.' " *House Speaker v State Administrative Bd*, 441 Mich 547, 562; 495 NW2d 539 (1993), quoting *Attorney General ex rel Owen v Joyce*, 233 Mich 619, 621; 207 NW 863 (1926). The question whether a statute is repealed by a subsequent statute relating to the same subject matter involves a determination of legislative intent, and where possible the former and subsequent statutes must be construed together and reconciled so as to give each force and effect. *Attorney General v Public Service Comm*, 161 Mich App 506, 513; 411 NW2d 469 (1987).

Here, Act 141 does not incorporate any express provision for repeal of MCL 460.6j. However, reading the statutes together as a whole, we agree with appellees that the clear intent of the Legislature was to temporarily supplant the usual PSCR process so as to implement the rate freeze provision of Act 141.[1] Prop-

---

[1] Indeed, such a construction is suggested by subsection 10a(12), which provides for an eventual return to the previous rate-setting method:

> After the time period described in section 10d(2), the rates for retail customers that remain with or leave and later return to the

erly construed, then, Act 141 does not repeal MCL 460.6j, but rather suspends its operation for a specified period. We adopt this construction because it resolves any ostensible conflict between the two statutes and gives force and effect to each. *Attorney General, supra,* 161 Mich App 513. See also *Knauff v Oscoda Co Drain Comm'r,* 240 Mich App 485, 492; 618 NW2d 1 (2000) (reading two statutes, claimed to be in conflict, together as providing alternative methods, independent of one another). Accordingly, we reject appellants' contention that Act 141 impliedly repeals the PSCR process provisions of MCL 460.6j.

### 3. DEFERENTIAL STANDARD OF REVIEW OF MPSC ORDERS

Lastly, given our historically deferential treatment of MPSC rulings, appellants have failed to overcome the heavy burden of demonstrating by clear and satisfactory evidence that the challenged dismissal orders were unlawful or unreasonable. MCL 462.26(8); *Michigan Consolidated Gas Co, supra* at 639. The MPSC reasonably construed the PSCR clause adjustments during the rate freeze period to be "inconsistent" with subsection 10d(1).

III

Appellants next argue that the MPSC's dismissal of the pending PSCR proceedings illegally cut off Edison's customers' rights to millions of dollars in refunds related to PSCR over-recoveries for 1999 and the first half of 2000 as well as Fermi 2 cost disallowances

---

incumbent electric utility shall be determined in the same manner as the rates were determined before the effective date of this section. [MCL 460.10a(12).]

established in MPSC Case No. U-8789. We hold that appellants have failed to demonstrate that subsection 10d(1) is an unconstitutional violation of their vested property or contract rights to refunds or credits.

### A. STANDARD OF REVIEW

Matters of constitutional and statutory interpretation are reviewed de novo by this Court. *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998); *Reynolds v Bureau of State Lottery*, 240 Mich App 84, 86; 610 NW2d 597 (2000).

### B. IMPAIRMENT OF CONTRACT RIGHTS

This state's constitution, Const 1963, art 1, § 10, provides that "[n]o bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted," which is substantially identical to the federal constitution, US Const, art I, § 10, which provides that "[n]o state shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . ." Our state constitutional provision is not interpreted more expansively than its federal counterpart. *In re Certified Question (Fun 'N Sun RV, Inc v Michigan)*, 447 Mich 765, 776, n 13; 527 NW2d 468 (1994); *Taylor v Secretary of State*, 216 Mich App 333, 339-340; 548 NW2d 710 (1996).

We agree with appellees that no contract rights are implicated in this case. Although Edison and certain customers, including ABATE, had entered into a 1988 stipulation and settlement agreement in MPSC Case No. U-8789 that provided for a 1999 refund of $18.9 million in Fermi 2 capacity performance standard

amounts, the settlement agreement did not establish traditional contract rights in the refund. Because the MPSC has primary jurisdiction to regulate all public utilities and their rates and conditions of service, see MCL 460.6, the settlement agreement was without effect unless approved by the MPSC, which it did in an "Order Approving Settlement Agreement," entered on December 27, 1988. However, the final paragraph of that order provided as follows:

> The Commission specifically reserves jurisdiction of the matters herein contained and the authority to issue such further order or orders as the facts and circumstances may require.

Thus, to the extent that any "rights" to refundable amounts were created in MPSC Case No. U-8789, such rights are dependent, not on vested contract rights, but on the provisions of the MPSC's approval order. However, given that the MPSC reserved jurisdiction to issue further orders in the case as necessary, any claim to a vested interest in the refund amounts was vitiated. Accordingly, appellants' argument regarding impairment of contract rights must fail.

### C. VIOLATION OF DUE PROCESS—IMPAIRMENT OF VESTED RIGHTS TO REFUNDS OR CREDITS

Both the state and federal constitutions provide that private property shall not be taken without due process of law or just compensation. US Const, Am V; Const 1963, art 1, § 17 and art 10, § 2. Due process is violated only when legislation impairs vested rights. *Taxpayers United for Michigan Constitution, Inc v Detroit*, 196 Mich App 463, 467-468; 493 NW2d 463 (1992).

One who asserts an uncompensated taking claim must first establish that a vested property right is affected. *Minty v Bd of State Auditors*, 336 Mich 370, 390; 58 NW2d 106 (1953). To constitute a vested right, the interest must be " 'something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws; it must have become a title, legal or equitable, to the present or future enjoyment of property . . . .' " *Id.*, quoting 2 Cooley, Constitutional Limitations (8th ed), p 749. Without a property right, a plaintiff has no basis for challenging a statute on the ground that it constitutes a confiscatory taking without due process of law. [*Fun 'N Sun RV*, *supra* at 787-788.]

In *Fun 'N Sun RV, supra*, policyholders in the state Accident Fund filed suit against the state and the Accident Fund, among others, seeking a determination that the policyholders were the owners of and entitled to any accumulated reserves in the fund in excess of those needed to cover liabilities. While the lawsuit was pending, the Legislature enacted a statute, MCL 418.701a, which authorized the state to sell the fund to a private party and to retain the proceeds. *Fun 'N Sun RV*, supra at 770. The Court of Claims granted summary disposition to the policyholders, finding that they had a vested right to the fund's assets. Upon certification of a question by request of the Governor, the Michigan Supreme Court held that the statute authorizing the state to sell and retain the proceeds of the sale of the Accident Fund did not impair the obligation of contracts or take property rights without due process of law because the policyholders had failed to demonstrate any ownership of specific property rights or contract rights. *Id.* at 775-776. The Court noted that the parties' separate theories of due process and obligation of contract each required the policyholders to demonstrate an owner-

ship interest in specific property rights or contract rights. *Id.* at 775.

Similarly, appellants here cannot make a persuasive claim to a vested right in any potential refunds. The statutory scheme gives the MPSC discretion whether to incorporate a PSCR clause in electric rates, MCL 460.6j(2), and this Court has held that the MPSC has the authority to suspend an electric utility's PSCR clause for a specified period as long as the suspension will not result in an increase in rates, *Attorney General, supra,* 231 Mich App 79-80; *Attorney General, supra,* 244 Mich App 406. Under such circumstances, any refund under MCL 460.6j is purely speculative, at least until the MPSC issues a final order mandating a refund of specific amounts. *Fun 'N Sun RV, supra* at 788-789; *Taxpayers United for Michigan Constitution, Inc, supra* at 468. Thus, appellants have failed to establish any vested right to a refund or credit in this case.

Affirmed.