*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

COVE CREEK CONDOMINIUM ASSOCIATION,

      Plaintiff/Counterdefendant-
      Appellee,

v

VISTAL LAND & HOME DEVELOPMENT, LLC, and MARIA A. CERVI AND AMERICO CERVI REVOCABLE LIVING TRUST,

      Defendants/Counterplaintiffs-
      Appellants.

FOR PUBLICATION
December 19, 2019
9:00 a.m.

No. 342372
Oakland Circuit Court
LC No. 2016-155706-CH

---

COVE CREEK CONDOMINIUM ASSOCIATION,

      Plaintiff/Counterdefendant-
      Appellant,

v

VISTAL LAND & HOME DEVELOPMENT, LLC, and MARIA A. CERVI AND AMERICO CERVI REVOCABLE LIVING TRUST,

      Defendants/Counterplaintiffs-
      Appellees.

No. 343144
Oakland Circuit Court
LC No. 2016-155706-CH

---

Before: RONAYNE KRAUSE, P.J., and METER and STEPHENS, JJ.

STEPHENS, J.

-1-

In Docket No. 342372, defendants/counterplaintiffs, Vistal Land & Home Development, LLC (Vistal), and Maria A. Cervi and Americo Cervi Revocable Living Trust (the Trust) (collectively, defendants), appeal as of right the order granting summary disposition in favor of plaintiff/counterdefendant, Cove Creek Condominium Association (plaintiff), dismissing all claims in defendants' second amended countercomplaint, and denying defendants' motions for summary disposition. The gravamen of this matter is a dispute as to which version of MCL 559.167 of the Condominium Act, MCL 559.101 *et seq.*, applies. The statute was amended several times during the existence of the condominium project. In Docket No. 343144, plaintiff appeals as of right the order denying its motion for attorney fees and costs. We affirm in both appeals.

I. BACKGROUND

This case arises from plaintiff's claims for declaratory and other relief related to former Units 1 through 14 of the Cove Creek Condominium project (the Condominium or the project). The Condominium was established by the recording of the Master Deed on April 21, 1989, and was composed of 31 units. It is undisputed that Units 15 to 31 were designated as "must be built," were constructed, and are currently owned, while Units 1 through 14 were identified as "need not be built" and were never constructed. The first unit was sold sometime in 1989.[1] On May 17, 1989, Lifestyle Homes, the original developer of the project, transferred its interest by quitclaim deed to Cove Creek Limited Partnership (Cove Creek LP). On September 15, 2004, Cove Creek LP executed a deed transferring Units 1 through 14 to Vistal Cothery, LLC.[2] On November 6, 2006, Vistal Cothery, LLC, executed a deed conveying Units 1 through 14 to Vistal. On October 25, 2016, Vistal quitclaimed its interest in Units 1 through 14 to the Trust. The day before, on October 24, 2016, plaintiff filed a complaint against defendants. In Count I, plaintiff sought a declaration that Units 1 through 14 no longer existed, that all land on which Units 1 through 14 were to be constructed was part of the general common elements, and that defendants did not have the right to withdraw Units 1 through 14.[3] Plaintiff relied on, and the trial court applied, MCL 559.167(3), as amended by 2002 PA 283, effective May 9, 2002, of the Condominium Act, MCL 559.101 *et seq* which read:

Notwithstanding section 33, if the developer has not completed development and construction of units or improvements in the condominium project that are identified as "need not be built" during a period ending 10 years

---

[1] The parties dispute the exact date in 1989 on which the first unit was conveyed. As discussed further below, however, the exact date is not dispositive and, for purposes of this appeal, it is significant that *construction commenced* sometime before either May 9, 1989, or October 27, 1989 (the dates alleged by the parties).

[2] The trial court found that there was no entity registered in Michigan as "Vistal Cothery, LLC" in 2004.

[3] In Counts II through V, plaintiff alternatively sought to quiet title, alleged a violation of the Condominium Act and breach of covenant for the failure to pay assessments, sought to foreclose on a statutory lien for the unpaid assessments, and alleged unjust enrichment.

after the date of commencement of construction by the developer of the project, the developer, its successors, or assigns have the right to withdraw from the project all undeveloped portions of the project not identified as "must be built" without the prior consent of any co-owners, mortgagees of units in the project, or any other party having an interest in the project. If the master deed contains provisions permitting the expansion, contraction, or rights of convertibility of units or common elements in the condominium project, then the time period is 6 years after the date the developer exercised its rights with respect to either expansion, contraction, or rights of convertibility, whichever right was exercised last. The undeveloped portions of the project withdrawn shall also automatically be granted easements for utility and access purposes through the condominium project for the benefit of the undeveloped portions of the project. *If the developer does not withdraw the undeveloped portions of the project from the project before expiration of the time periods, those undeveloped lands shall remain part of the project as general common elements and all rights to construct units upon that land shall cease.* In such an event, if it becomes necessary to adjust percentages of value as a result of fewer units existing, a co-owner or the association of co-owners may bring an action to require revisions to the percentages of value under section 95. [MCL 559.167(3), as amended by 2002 PA 283 (emphasis added).[4]]

On November 3, 2016, the Trust informed plaintiff that it had withdrawn Units 1 through 14 from the project. The Trust relied on MCL 559.167(3), (4) and (5), as amended by 2016 PA 233. The 2016 version of the statute, effective September 21, 2016, provides, in relevant part:

(3) Notwithstanding section 33, for 10 years after the recording of the master deed, the developer, its successors, or assigns may withdraw from the project any undeveloped land or convert the undeveloped condominium units located thereon to "must be built" without the prior consent of any co-owners, mortgagees of condominium units in the project, or any other party having an interest in the project. If the master deed confers on the developer expansion, contraction, or convertibility rights with respect to condominium units or common elements in the condominium project, then the time period is 10 years after the recording of the master deed or 6 years after the recording of the amendment to the master deed by which the developer last exercised its expansion, contraction, or convertibility rights, whichever period ends later. Any undeveloped land so withdrawn is automatically granted easements for utility and access purposes through the condominium project for the benefit of the undeveloped land.

(4) *If the developer does not withdraw undeveloped land from the project or convert undeveloped condominium units to "must be built" before expiration*

---

[4] We note that Subsection (3) itself and the language in dispute (emphasized above) was first added in 2000. See 2000 PA 379. The 2002 version made other changes that are not in dispute. See 2002 PA 283.

*of the applicable time period under subsection (3), the association of co-owners, by an affirmative ²/₃ majority vote of the members in good standing, may declare that the undeveloped land shall remain part of the project but shall revert to general common elements and that all rights to construct condominium units upon that undeveloped land shall cease.* When such a declaration is made, the association of co-owners shall provide written notice of the declaration to the developer or any successor developer by first-class mail at its last known address. Within 60 days after receipt of the notice, the developer or any successor developer may withdraw the undeveloped land or convert the undeveloped condominium units to "must be built". However, if the undeveloped land is not withdrawn or the undeveloped condominium units are not converted within 60 days, the association of co-owners may file the notice of the declaration with the register of deeds. The declaration takes effect upon recording by the register of deeds. The association of co-owners shall also file notice of the declaration with the local supervisor or assessing officer. In such an event, if it becomes necessary to adjust percentages of value as a result of fewer condominium units existing, a co-owner or the association of co-owners may bring an action to require revisions to the percentages of value under section 95.

(5) *A reversion under subsection (4), whether occurring before or after the date of the 2016 amendatory act that added this subsection, is not effective unless the election, notice, and recording requirements of subsection (4) have been met.* [MCL 559.167(3)-(5), as amended by 2016 PA 233 (emphasis added).]

On December 9, 2016, plaintiff filed a first amended complaint, which addressed events that occurred after the filing of the complaint. Nevertheless, plaintiff's Count I continued to seek declaratory relief against the Trust under MCL 559.167, as amended by 2002 PA 283. On November 21, 2016, defendants filed a motion for summary disposition under MCR 2.116(C)(8) on Count I, arguing that plaintiff's claim solely relied on the 2002 version of MCL 559.167, which was repealed and restated, effective September 21, 2016. Defendants argued that the 2016 amendment applied retroactively and did not divest plaintiff of any vested rights. Plaintiff replied that the 2016 amendment only applied to current "need not be built" units and did not revive former "need not be built" units that had already ceased to exist. It also argued that applying the 2016 amendment retroactively would abrogate vested property rights and violate the due-process rights of co-owners. Plaintiff contended that summary disposition should be granted in its favor under MCR 2.116(I)(2).

On January 11, 2017, a hearing was held on defendants' motion for summary disposition regarding Count I. Defendants argued that plaintiff's claim that the constitutionality of the 2016 amendment was not properly before the court. Plaintiff argued that if this motion was decided in its favor, then the other claims in the complaint and defendants' countercomplaint[5] were moot. On February 10, 2017, the trial court issued an opinion and order denying defendants' motion for

---

[5] Defendants' counterclaims are discussed below.

-4-

summary disposition on Count I and granting summary disposition in favor of plaintiff pursuant to MCR 2.116(I)(2). The court applied the 2002 version of MCL 559.167 to find that all the land on which Units 1 through 14 were to have been constructed had become part of the general common elements. It further ruled that the Trust did not have the right to withdraw Units 1 through 14, or the land on which Units 1 through 14 were to be located, from the Condominium. In accord with the 2002 amendment, the trial court found that the 10-year period for defendants to withdraw the undeveloped units began before October 27, 1989, the time of construction, and expired on October 27, 1999. The trial court further found that, even if the 10-year period had not begun to run until 2002, the right to withdraw expired and the developer lost all rights to develop on May 9, 2012. The trial court found that the vesting of title in plaintiff occurred by operation of law when the 10-year period expired prior to the enactment of the 2016 amendments. The trial court finally ruled that the 2016 amendments were not retroactive. A motion to reconsider was denied.

On June 30, 2017, the trial court granted defendants leave to file an amended countercomplaint. On July 5, 2017, defendants filed a second amended countercomplaint in which defendants sought reimbursement for the payment of real property taxes in the amount of $80,986.64 under theories of restitution (Count I), indemnification (Count II), quantum meruit/unjust enrichment (Count III), detrimental reliance/promissory estoppel (Count IV), and account stated (Count V). Defendants also sought to quiet title to the property, arguing that their deeds were recorded before plaintiff recorded notice of its interest in Units 1 through 14 (Count VI), and claiming that plaintiff lost any interest in Units 1 through 14 through adverse possession (Count VII). Finally, in Count VIII, defendants alleged that, if the trial court gave plaintiff title, then plaintiff would receive a windfall and be unjustly enriched. In early October 2017, defendants filed motions for summary disposition pursuant to MCR 2.116(C)(10) as to their counterclaims.

On October 17, 2017, plaintiff filed a motion for summary disposition seeking dismissal of defendants' second amended countercomplaint pursuant to MCR 2.116(C)(7), (8), and (10). Plaintiff argued that defendants were attempting to avoid the court's prior ruling regarding title and that Count VI should be dismissed because the court had already rejected that argument in ruling on defendants' earlier motion for reconsideration.

On November 15, 2017, plaintiff filed a response to defendants' motion for summary disposition as to Counts I, II, III, IV, V, and VIII. Plaintiff argued that defendants' claims for property taxes failed as a matter of law because (1) there was an adequate remedy at law, and (2) defendants did not provide a benefit to plaintiff because common elements may not be taxed. Plaintiff argued that Michigan law provides a clear legal remedy for reimbursement of taxes assessed or paid by mistake.[6] Plaintiff additionally argued that there was no wrongful conduct necessary for a claim of indemnity, defendants' claim for promissory estoppel was based on a 2007 purchase agreement between Vistal and plaintiff, which was an express contract that barred

---

[6] Plaintiff noted that defendants had also filed a lawsuit seeking legal relief against the entities that sold them the property in 2004.

the claim of promissory estoppel, and there was no agreement as required for a claim of account stated. Finally, plaintiff argued that defendants' claims were barred by MCR 3.411(F). In response to defendants' motion for summary disposition regarding Count VI, plaintiff argued that (1) the trial court had already ruled on the issue of title, (2) MCL 565.29 was not controlling because defendants were not "purchasers in good faith," (3) MCL 559.143 was inapplicable, and (4) the exact time that the developer rights were lost was not dispositive.

On January 31, 2018, the trial court issued an opinion and order granting plaintiff's motion for summary disposition, dismissing all claims in the second amended countercomplaint, and denying defendants' motions for summary disposition. Regarding Counts I and II (restitution and indemnification), the trial court ruled that plaintiff was entitled to summary disposition pursuant to MCR 2.116(C)(10) because defendants were not entitled to contractual indemnity. The trial court reasoned that there was no evidence of any implied or express contract of indemnity, and defendants did not have a valid common-law claim for restitution because there was no evidence that plaintiff committed any wrongful act that caused defendants to pay the property taxes. The trial court also found that plaintiff was entitled to summary disposition on Counts III and VIII (quantum meruit and unjust enrichment) because there was a remedy at law and no evidence that plaintiff was unjustly enriched because the property would not have been foreclosed upon. Next, the trial court ruled that plaintiff was entitled to summary disposition on Count IV (detrimental reliance/promissory estoppel) because there was no evidence that plaintiff made a promise or that plaintiff should have expected defendants to act or fail to act on the basis of any promise. As to Count V (account stated), the trial court ruled that plaintiff was entitled to summary disposition because there was no evidence of an account stated in writing by the creditor and accepted as correct by the debtor. The trial court found that plaintiff was entitled to summary disposition on Count VI (quiet title/declaratory relief) pursuant to MCR 2.116(C)(7) because MCL 565.29 was inapplicable for the reason that there was no conveyance, defendants were not subsequent purchasers in good faith, and defendants failed to comply with MCR 3.411(F). Finally, the trial court ruled that plaintiff was entitled to summary disposition on Count VII (adverse possession) pursuant to MCR 2.116(C)(10) because defendants' use of the land was not actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period of 15 years, nor was it hostile and under cover of claim of right. Defendants filed their claim of appeal from this order on February 12, 2018.

On February 27, 2018, plaintiff filed a motion for attorney fees and costs as a form of sanctions against defendants pursuant to MCR 2.114, MCR 2.313, MCR 2.625, and MCL 600.2591. After a hearing on plaintiff's motion, the trial court found no basis to sanction defendants and denied the motion. The trial court stated, "I can't remember any point in this entire litigation where I thought this is a frivolous pleading that has been filed, this was a frivolous motion that has been brought. I think this was a difficult case." On March 23, 2018,

the trial court entered an order denying the motion for attorney fees and costs. Plaintiff filed its claim of appeal from this order on April 2, 2018.[7]

## II. DOCKET NO. 342372

In Docket No. 342372, defendants contend that the trial court erred by applying the 2002 version of MCL 559.167 because the 2016 amendment applies retroactively and, in the alternative, that the earlier versions of the statute violated defendants' due-process rights and constituted an unconstitutional taking. We disagree.

## A. SUMMARY DISPOSITION

Defendants moved for summary disposition of plaintiff's amended Count I pursuant to MCR 2.116(C)(8), and the trial court granted summary disposition in favor of plaintiff pursuant to MCR 2.116(I)(2).

## 1. ISSUE PRESERVATION AND STANDARD OF REVIEW

"In order to properly preserve an issue for appeal, it must be raised before, and addressed and decided by, the trial court." *Henderson v Dep't of Treasury*, 307 Mich App 1, 7-8; 858 NW2d 733 (2014) (quotation marks and citation omitted). Defendants moved for summary disposition on Count I of plaintiff's amended complaint on the ground that plaintiff's claim for relief was based on a repealed version of MCL 559.167. The trial court disagreed and granted summary disposition in favor of plaintiff on Count I. Therefore, the issue of whether the 2016 amendment to MCL 559.167 applies retroactively is preserved.

The parties, as early as November 2016, addressed the constitutional issues of due process and the takings clause. The court implicitly acknowledged that the parties raised those issues when it ruled. The court made the decision to decide this case based upon non-constitutional grounds. There is a preference for resolution on non-constitutional grounds where possible. *Lichtman v City of Detroit*, 75 Mich App 731, 734; 255 NW2d 750 (1977). As early as November, this issue was noted in Defendants' Motion for Summary Disposition as to Count I. It was later argued in a reply brief filed by the defendants, but like other constitutional issues, was not discussed by the court in its opinion. In fact the court specifically declined to rule on any constitutional issues, stating "Plaintiff makes other valid arguments as to why a reading of MCL 559.167 as proposed by the Defendants would render the statute unconstitutional. However, the Court need not address that issue at this time." An argument could be made that because the parties did not address this issue at oral argument and the trial court failed to address the issue in its opinion and order, it is not preserved. However, because the issue was raised in the parties' briefing, it is preserved for appeal. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). In this instance even if the issue were unpreserved, this

---

[7] The appeals were consolidated on April 19, 2018. See *Cover [sic] Creek Condo Ass'n v Vistal Land & Home Dev, LLC*, unpublished order of the Court of Appeals, entered April 19, 2018 (Docket Nos. 342372; 343144).

Court, having all relevant facts before it, would review the legal issue. *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 518; 847 NW2d 657 (2014).

MCR 2.116(I)(2) provides that "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Rataj v City of Romulus*, 306 Mich App 735, 746; 858 NW2d 116 (2014). "A motion brought under MCR 2.116(C)(8) tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted. The motion must be granted if no factual development could justify the plaintiff's claim for relief." *Id*. at 746-747 (quotation marks and citations omitted). "A court may grant summary disposition to the opposing party under MCR 2.116(I)(2) if it determines that the opposing party, rather than the moving party, is entitled to judgment." *Ashley Capital, LLC v Dep't of Treasury*, 314 Mich App 1, 6; 884 NW2d 848 (2015) (quotation marks and citation omitted). This Court also reviews de novo an issue of statutory construction, which is a question of law. *Id*.

With regard to defendants' unpreserved due-process argument, whether a party has been afforded due process, *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009) and whether MCL 559.167, as amended by 2002 PA 283, caused an unconstitutional taking, are questions of law this Court reviews de novo, *Hinojosa v Dep't of Natural Resources*, 263 Mich App 537, 541; 688 NW2d 550 (2004). The relevant facts are available for both issues; therefore, appellate consideration is not precluded. "Review of an unpreserved error is limited to determining whether a plain error occurred that affected substantial rights." *Rivette v Rose-Molina*, 278 Mich App 327, 328; 750 NW2d 603 (2008).

## 2. ANALYSIS

### *i*. RETROACTIVITY

Whether the 2016 amendment to MCL 559.167 applies retroactively is a question of first impression. We begin with the presumption that statutory amendments operate prospectively. *Davis v State Employees' Retirement Bd*, 272 Mich App 151, 155; 725 NW2d 56 (2006). "[S]tatutes and amended statutes are to be applied prospectively unless the Legislature manifests an intent to the contrary. The Legislature's expression of an intent to have a statute apply retroactively must be clear, direct, and unequivocal as appears from the context of the statute itself." *Id*. at 155-156 (citations omitted). Legislative intent governs the determination of statutory retroactivity. *Id*. at 156. "[T]he Legislature has shown on several occasions that it knows how to make clear its intention that a statute apply retroactively." *Id*. (quotation marks and citation omitted). For example, MCL 141.1157 provides: "This act shall be applied retroactively . . . [,]" and MCL 324.21301a(2) provides: "The changes in liability that are

provided for in the amendatory act that added this subsection shall be given retroactive application." *Id*.[8]

"There is an exception to the general rule that newly enacted statutes are presumed to apply prospectively, which exception provides that no such presumption exists where the statute is remedial or procedural in nature, as long as it does not deny vested rights." *Davis*, 272 Mich App at 158. Therefore, "[a] statute may not be applied retroactively if it abrogates or impairs vested rights, creates new obligations, or attaches new disabilities concerning transactions or considerations occurring in the past." *Id*.

The 2016 amendment to MCL 559.167 does not expressly provide that it is retroactive. In other words, there is no clear, direct, or unequivocal language in the actual statute that the statute is to be applied retroactively, such as language stating that "these amendments shall be given retroactive application." Defendants argue that the use of the word "occurring" in Subsection (5) expressly makes the 2016 amendment retroactive. MCL 559.267(5) provides: "A reversion under subsection (4), whether *occurring* before or after the date of the 2016 amendatory act that added this subsection, is not effective unless the election, notice, and recording requirements of subsection (4) have been met." MCL 559.167(5), as amended by 2016 PA 233 (emphasis added). This language, however, is not a clear and unequivocal expression of the Legislature's intent to apply the amendment retroactively.[9] The Legislature's choice of the word "occurring," rather than "occurred," is significant.[10] As the trial court determined, the present participle indicates that the 2016 amendment does not apply to any "reversion" that had already occurred. Before the 2016 amendment, MCL 559.167 did not use the term "reversion" or contain Subsection (4). Therefore, "[a] reversion under subsection (4)" could not have *occurred* before the effective date of the 2016 amendment. Likewise, the use of the word "occurring" in Subsection (5) signals the progressive aspect and shows that an action was, is, or will be unfinished at the time referred to. *People v Manuel*, 319 Mich App 291, 301-302; 901 NW2d 118 (2017). Thus, the statute signals that a "reversion under subsection (4)"

---

[8] MCL 324.21301a was amended in 2012, see 2012 PA 108, and currently provides: "The liability provisions that are provided for in this part shall be given retroactive application."

[9] In *Ferry Beaubien LLC v Centurion Place on Ferry Street Condo Ass'n*, unpublished per curiam opinion of the Court of Appeals, issued December 14, 2017 (Docket No. 335571), p 6, 7 n 4, this Court applied the 2002 version of the statute because it was in effect at the time in question and this Court further noted that "nothing in the language of amended Subsection (3) suggests that it applies retroactively. We presume that statutory amendments operate prospectively unless a contrary intent is clearly manifested in the language of the statute." This Court, however, also stated that it was not addressing the effect of the 2016 amendment of MCL 559.167 on the reversion to general common elements. *Id*. at 6 n 3. We recognize that unpublished opinions are not binding under the rule of stare decisis, but they may be considered for their instructive or persuasive value. *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

[10] See *People v Manuel*, 319 Mich App 291, 301-302; 901 NW2d 118 (2017).

may be in the process of occurring when the statute became effective. In those cases, the requirements of the 2016 amendment must be satisfied. As plaintiff argues, however, nothing suggests that completed transfers under the earlier versions of the statute are to be reversed.[11]

Defendants also argue that the statute is remedial and, therefore, must be applied retroactively. "A statute is remedial or procedural in character if it is designed to correct an existing oversight in the law or redress an existing grievance[.]" *Davis*, 272 Mich App at 158-159 (quotation marks and citation omitted). Defendants specifically argue that the 2016 amendment was intended to address due-process deficiencies in the prior versions of the statute. However, the "legislative history" cited by plaintiff indicates that the purpose of the 2016 amendment was to address "confusion regarding the timing of the transfer of property and the title history of transferred property."[12]

Nonetheless, even if the 2016 amendment is considered remedial, it cannot apply retroactively if it abrogates vested rights. See *Davis*, 272 Mich App at 158. Under the 2002 version of MCL 559.167(3), "[i]f the developer does not withdraw the undeveloped portions of the project before expiration of the time periods, *those undeveloped lands shall remain part of the project as general common elements and all rights to construct units upon that land shall cease*." MCL 559.167(3), as amended by 2002 PA 283 (emphasis added). In this case, 10 years after the date of commencement of the project was sometime in 1999, or possibly sometime in 2012 at the latest.[13] When the rights to construct units ceased, plaintiff obtained a vested right in the undeveloped lands (former Units 1 through 14). The trial court found that plaintiff's rights vested by operation of law, without any action. We agree.

Defendants' arguments against vesting are that (1) plaintiff did not prepare and record a replat under MCL 559.167(2), and (2) the 2002 version of MCL 559.167 violated defendants' due-process rights. The version of MCL 559.167(2), as amended by 2002 PA 283, provides: "If a change involves a change in the boundaries of a condominium unit or the addition or elimination of condominium units, a replat of the condominium subdivision plan shall be prepared and recorded assigning a condominium unit number to each condominium unit in the amended project." As found by the trial court, nothing in this language required a replat to be

---

[11] We note that plaintiff argued to the contrary below. In its complaint, plaintiff asserted that "MCL 559.167, as amended by 2016 PA 233, which became effective on September 21, 2016 attempts to retroactively undo any prior reversion of units to common elements . . . ." Plaintiff's position changed in its response to defendants' motion for summary disposition on Count I of the complaint.

[12] Senate Fiscal Agency, Bill Analysis Senate Bill 610 of 2016, p 1, July 5, 2016.

[13] As noted above, the first unit was sold at some point in 1989 and, therefore, construction must have commenced before that date. Furthermore, as the trial court found, even if the 10-year period did not begin to run until the 2002 amendment became effective, it would still have lapsed in 2012.

recorded, or conditioned a "reversion" on the recording.[14] Thus, a "reversion" occurred regardless of whether a replat was prepared or recorded. While plaintiff's failure to record a replat may have some other effect, it did not prevent the undeveloped property from remaining part of the project as general common elements and the right to construction ceasing under Subsection (3). We discuss defendants' due process argument separately below.

## *ii*. DUE PROCESS

Defendants contend that they were deprived of their due-process rights under the 2002 version of MCL 559.167 because they were not provided with notice and a hearing before they were permanently deprived of their property rights in former Units 1 through 14. We disagree.

"Both the state and federal constitutions provide that private property shall not be taken without due process of law or just compensation. Due process is violated only when legislation impairs vested rights." *Attorney General v Mich Pub Serv Comm*, 249 Mich App 424, 435; 642 NW2d 691 (2002). "To constitute a vested right, the interest must be something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws; it must have become a title, legal or equitable, to the present or future enjoyment of property . . . ." *Id*. at 436 (quotation marks and citation omitted).

Preliminarily, plaintiff argues that defendants, and their predecessors, did not have any vested property right in Units 1 through 14 that was affected by operation of the 2002 version of the statute. They argue that, at all times before the 10-year period expired, Units 1 through 14 were part of the project and defendants had the option to either complete construction or withdraw those units from the project. According to plaintiff, an option is merely a contingent interest. See *Amoco Oil Co v Kraft*, 89 Mich App 270, 275; 280 NW2d 505 (1979). As successor developers of the project, however, defendants had title to the entire project, including the "need not be built" units, which it had the right to develop or withdraw. Accordingly, defendants had a vested property interest in former Units 1 through 14 before the 10-year period expired.

Even if defendants had a vested property right in former Units 1 through 14, the lapse of that right did not deny defendants due process of law. In *City of Kentwood v Estate of Sommerdyke*, 458 Mich 642, 646; 581 NW2d 670 (1998), our Supreme Court held that "the state has the authority to condition the retention of certain property rights on the performance of an affirmative act within a reasonable statutory period." That case involved the highway-by-user statute, MCL 721.20. *City of Kentwood*, 458 Mich at 645. As stated by the Court:

> Even with respect to vested property rights, a legislature generally has the power to impose new regulatory constraints on the way in which those rights are used, or to condition their continued retention on performance of certain affirmative

---

[14] Although the preparation and recording of a replat was required by MCL 559.167(2), there is nothing linking this requirement to Subsection (3) or conditioning the "reversion" in Subsection (3) on such requirement.

duties. As long as the constraint or duty imposed is a reasonable restriction designed to further legitimate legislative objectives, the legislature acts within its powers in imposing such new constraints or duties. [L]egislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. [*Id*. at 652-653 (quotation marks and citation omitted).]

Therefore, the Court held that "the state may condition the permanent retention of a property right on performance of reasonable conditions that indicate a present intention to retain the property interest." *Id*. at 655-656. The Court concluded that "by treating property that has not been reserved for private use for ten years or longer as dedicated to the public for use as a highway, the Michigan statute is a reasonable exercise of police power." *Id*. at 656. Regarding whether due process was afforded, the Court stated, "generally, a legislature need only enact and publish a law and afford citizens a reasonable opportunity to familiarize themselves with the terms of a statute to advise its citizens of the lapse of a property right." *Id*. at 664.

Similarly, MCL 559.167(3), as amended by 2002 PA 283, conditioned the retention of a property right on the performance of reasonable conditions that indicate a present intention to retain that property interest. Within the 10-year period, defendants were required to either develop Units 1 through 14 or withdraw the undeveloped portions from the project. See MCL 559.167(3), as amended by 2002 PA 283. Defendants had sufficient notice of the law and that their property rights would lapse if they did not take action within the 10-year period. Moreover, the requirements of either completing the project or withdrawing the units from the project are reasonable requirements designed to further the legitimate objectives of preventing incomplete projects and providing finality. Defendants rely on cases involving the forfeiture of real property for the failure to pay taxes, which require notice and a hearing to afford due process. Under the above caselaw, however, defendants received all the process that was due. As a consequence, any vested rights defendants possessed in the property lapsed by 2012.

### *iii*. UNCONSTITUTIONAL TAKING

Defendants also contend that the 2002 version of MCL 559.167, which mandated a permanent transfer of title, caused an unconstitutional taking without just compensation and in violation of the public use requirement. We disagree.

"The Fifth Amendment provides in part: '[N]or shall private property be taken for public use, without just compensation.' " *City of Kentwood*, 458 Mich at 656. "The Fifth Amendment prohibition applies against the states through the Fourteenth Amendment. Michigan's Constitution is substantially similar to the Taking Clause of the United States Constitution." *Id*. (citations omitted). "One who asserts an uncompensated taking claim must first establish that a vested property right is affected." *Mich Pub Serv Comm*, 249 Mich App at 436 (quotation marks and citation omitted).

As discussed, defendants had a vested property right in former Units 1 through 14, such that they could properly assert an uncompensated taking claim. Nonetheless, the necessary state action required to find an unconstitutional taking is not present. As stated in *City of Kentwood*, 458 Mich at 663, "It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no 'taking' that requires

compensation." (Quotation marks and citation omitted.) Similarly, in this case, it was defendants' failure to act within the 10-year period that caused the lapse of their property right, not any action of the state. Therefore, there is no "taking" that requires compensation under the United States and Michigan Constitutions. We further reject defendants' claim for inverse condemnation because it was not raised below and is not asserted against the government. "Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *Mays v Snyder*, 323 Mich App 1, 79; 916 NW2d 227 (2018) (quotation marks and citations omitted; emphasis added). In this case, defendants make this claim against plaintiff, a condominium association, not a governmental unit and, therefore, their claim for inverse condemnation fails.

Summarily, the trial court correctly applied MCL 559.167, as amended by 2002 PA 283, and properly granted summary disposition in favor of plaintiff on Count I of the complaint. Further, MCL 559.167, as amended by 2002 PA 283, did not cause an unconstitutional taking nor did it deny defendants due process of law.

## B. DEFENDANTS' COUNTERCLAIMS

The trial court granted summary disposition in favor of plaintiff on defendants' counterclaims for reimbursement for the payment of tax bills and denied defendants' motion under MCR 2.116(C)(10). This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Rataj*, 306 Mich App at 746. "Summary disposition is proper under MCR 2.116(C)(10) if the affidavits and other documentary evidence show that there is no genuine issue concerning any material fact and that the moving party is entitled to judgment as a matter of law." *Id*. at 747 (quotation marks and citation omitted).

This issue is waived for appellate review. Defendants merely contend that they are entitled to reimbursement because they paid the taxes on Units 1 through 14 until 2015, and the payment of taxes constitutes an improvement to the property. However, defendants provide no supporting reasoning. They fail to address, for example, any of the specific causes of actions alleged in their second amended countercomplaint, the elements of those causes of action, or the trial court's rulings on those claims. "A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the claim." *Caldwell v Chapman*, 240 Mich App 124, 132-133; 610 NW2d 264 (2000).

## IV. DOCKET NO. 343144

Following the filing of defendants' claim of appeal in Docket No. 342372, plaintiff filed a motion for attorney fees and costs, which the trial court denied. In Docket No. 343144, plaintiff appeals the order denying its motion for attorney fees and costs. Plaintiff contends that the trial court erred by denying its request for attorney fees and costs related to defendants' filing of (1) the counterclaims in defendants' second amended countercomplaint, (2) the motion to strike, and (3) the motion to compel. We disagree.

## A. STANDARD OF REVIEW

-13-

This Court reviews for an abuse of discretion a request for sanctions under MCR 2.114 and MCR 2.313. *Sprenger v Bickle*, 307 Mich App 411, 422-423; 861 NW2d 52 (2014); *Phinisee v Rogers*, 229 Mich App 547, 561-562; 582 NW2d 852 (1998). "A trial court abuses its discretion when it chooses an outcome that falls outside the range of reasonable and principled outcomes." *Fette v Peters Constr Co*, 310 Mich App 535, 547; 871 NW2d 877 (2015). "[T]he court's underlying factual findings, including a finding of frivolousness, are reviewed for clear error." *Sprenger*, 307 Mich App at 423. "A decision is clearly erroneous when, although there may be evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *Guerrero v Smith*, 280 Mich App 647, 677; 761 NW2d 723 (2008).

## B. ANALYSIS

"Sanctions are warranted under MCR 2.114 where a plaintiff asserts claims without any reasonable basis in law or fact for those claims, or where the claims are asserted for an improper purpose." *Robert A Hansen Family Trust v FGH Indus, LLC*, 279 Mich App 468, 486; 760 NW2d 526 (2008); MCR 2.114(D).[15] MCR 2.114(E), which was in effect at the time that plaintiff filed its motion for attorney fees and costs and the trial court ruled on the motion, provided:

> If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

Under MCR 2.114(F), "a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2)." MCR 2.625(A)(2) provides: "In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." MCL 600.2591 provides:

> (1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.
>
> (2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

---

[15] MCR 2.114 has been repealed, effective September 1, 2018, and substantially relocated to current MCR 1.109(E).

(3) As used in this section:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

(b) "Prevailing party" means a party who wins on the entire record.

As this Court explained in *Guerrero*, 280 Mich App at 677-678:

Pursuant to MCR 2.114(D), an attorney is under an affirmative duty to conduct a reasonable inquiry into both the factual and legal basis of a document before it is signed. Under MCR 2.114(D), the signature of a party or an attorney is a certification that the document is "well grounded in fact and . . . warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law" and that "the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." The filing of a signed document that is not well grounded in fact and law subjects the filer to sanctions pursuant to MCR 2.114(E). MCR 2.114(E) states that the trial court "shall" impose sanctions upon finding that a document has been signed in violation of the rule. Therefore, if a violation of MCR 2.114(D) has occurred, the sanctions provided for by MCR 2.114(E) are mandatory. [Citations omitted.]

### 1. COUNTERCLAIMS

Plaintiff first argues that the trial court was required to impose sanctions for defendants' filing of frivolous and untimely counterclaims, as well as defendants misrepresenting that they paid property taxes on former Units 1 through 14. Plaintiff argues that defendants' counterclaims were frivolous because (1) restitution is not a cause of action, (2) there was no special relationship necessary for indemnification, (3) there was a statutory remedy available and no benefit to plaintiff, (4) no promises were made, (5) there were no mutual dealings necessary for a claim of account stated, (6) defendants had no basis to assert a claim for quiet title because the trial court had already ruled on the issue, and (7) there was no factual basis for a claim of adverse possession.

We disagree that defendants misrepresented that they paid taxes on the property. The second amended countercomplaint alleged that "Defendants, directly or through their predecessors in title, paid real property taxes on Units 1 through 14 prior to tax year 2000." They argued the same in their motion for summary disposition. Defendants attached to their motion for summary disposition a tax history showing taxes paid on the property, receipts, checks, and tax statements. The motion also specifically alleged that "[a]ny entity paying any

-15-

taxes on any of the 14 units has assigned its interest and claim to reimbursement to VISTAL and or TRUST." Defendants attached the assignments to their motion. Accordingly, there was at least a question of fact regarding whether defendants, or their predecessors whose rights defendants had acquired, paid property taxes on Units 1 through 14, and the amount of the taxes paid, such that the trial court did not abuse its discretion by denying sanctions on this ground.

Moreover, the trial court's finding that the counterclaims were not frivolous is not clearly erroneous. After the trial court determined that defendants lost any right to construct Units 1 through 14, defendants sought to recover the property taxes that they or their predecessors allegedly paid by asserting various theories of relief. Although we agree with the trial court's dismissal of those claims because there is a statutory remedy available, there was arguable legal merit to their claim that the statutory remedy was not sufficient. There was also arguable legal merit to defendants' arguments that their motion was timely under MCR 3.411(F) given the filing of their motion for reconsideration. Furthermore, plaintiff fails to establish that defendants merely intended to increase costs by filing the counterclaims.

Defendants' specific counterclaims for restitution, indemnification, quantum meruit/unjust enrichment, and promissory estoppel were properly dismissed by the trial court. However, the trial court's finding that those claims had arguable legal merit is not clearly erroneous. "A claim is not frivolous merely because the party advancing the claim does not prevail on it. Instead, a claim is devoid of *arguable* legal merit if it is not sufficiently grounded in law or fact, such as when it violates basic, longstanding, and unmistakably evident precedent." *Grass Lake Improvement Bd v Dep't of Environmental Quality*, 316 Mich App 356, 365; 891 NW2d 884 (2016) (quotation marks and citations omitted).

With regard to the claim of restitution, plaintiff relies on the fact that restitution is a remedy, not a claim. Although we agree that restitution is merely a remedy, our Supreme Court has nonetheless referred to a "claim of restitution." See, e.g., *Zerrenner v Zerrenner*, 474 Mich 1103, 1103; 711 NW2d 380 (2006). In any event, courts look beyond labels. See, e.g., *Norris v Lincoln Park Police Officers*, 292 Mich App 574, 582; 808 NW2d 578 (2011). Therefore, this claim was not devoid of arguable legal merit.

Concerning the claim for indemnification, "[t]he right to common-law indemnification is based on the equitable theory that where the wrongful act of one party results in another party's being held liable, the latter party is entitled to restitution for any losses." *Botsford Continuing Care Corp v Intelistaf Healthcare, Inc*, 292 Mich App 51, 62; 807 NW2d 354 (2011) (quotation marks and citation omitted). Plaintiff asserts that this Court has "routinely upheld the dismissal of indemnification claims in which a party has failed to plead a special relationship or course of conduct amongst the parties." Plaintiff, however, only cites cases decided before November 1, 1990, which are not binding. MCR 7.215(J)(1). Moreover, our Supreme Court has held that "[r]estitution recognizes the need for compensation in instances when the receipt and retention of a benefit by a person without payment made to the person providing that benefit would result in injustice." *In re Bradley Estate*, 494 Mich 367, 409; 835 NW2d 545 (2013). Therefore, defendants could have reasonably believed that they had a claim against plaintiff for the taxes that they allegedly paid on property that was owned by plaintiff. This argument was not devoid of arguable legal merit, even though real property taxes were not actually owed on former Units 1 through 14 because they were general common elements and common elements are not

taxable. *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 149; 783 NW2d 133 (2010).

In support of the claims of quantum meruit and unjust enrichment, plaintiff merely relies on the fact that a statutory remedy was available and no benefit was received. "The theory underlying quantum meruit recovery is that the law will imply a contract in order to prevent unjust enrichment when one party inequitably receives and retains a benefit from another." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 194; 729 NW2d 898 (2006) (quotation marks and citation omitted). Although taxes were not actually owed on common general elements, defendants allegedly paid the taxes on the basis of a mutual mistake. Accordingly, there was arguable legal merit to their claim to recover that money from plaintiff on the basis that plaintiff, as the owner of the property, received an unfair benefit.

With regard to defendants' claim of promissory estoppel, the elements are "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Klein v HP Pelzer Auto Sys, Inc*, 306 Mich App 67, 83; 854 NW2d 521 (2014) (quotation marks and citation omitted). Defendants' second amended countercomplaint referred to a 2007 contract, but it did not allege that any specific promise was made. However, in reliance on *Ollig v Eagles*, 347 Mich 49; 78 NW2d 553 (1956), defendants alleged a claim of "promissory estoppel" on the basis of plaintiff's alleged silence or acquiescence while defendants paid the real property taxes. Although *Ollig* involved equitable estoppel rather than promissory estoppel,[16] the substance of the claim controls, not its label. *Norris*, 292 Mich App at 582. In *Ollig*, the Court considered whether

> when an occupying claimant in good faith, but mistakenly, relied upon the belief that his wife had title to land and built a house thereon with the full knowledge and silent acquiescence of the actual owner and upon discovery brings suit in equity for an accounting for the value of his improvements, is a chancery court powerless to grant relief[.] [*Ollig*, 347 Mich at 60].

Based on *Ollig*, there was arguable legal merit to defendants' claim, even though the claim was properly dismissed because the payment of taxes that were not owed did not improve the land.

Defendants' claims for account stated, to quiet title, and for adverse possession were also dismissed by the trial court. For the reasons discussed below, however, those claims were not devoid of arguable legal merit and, therefore, the trial court did not abuse its discretion by declining to impose sanctions.

---

[16] The distinction is that "[e]quitable estoppel is essentially a doctrine of waiver," whereas promissory estoppel "substitutes for consideration in a case where there are no mutual promises." *Huhtala v Travelers Ins Co*, 401 Mich 118, 132-133; 257 NW2d 640 (1977).

First, "[a]n account stated is a contract based on assent to an agreed balance, and it is an evidentiary admission by the parties of the facts asserted in the computation and of the promise by the debtor to pay the amount due." *Fisher Sand & Gravel Co v Neal A Sweebe, Inc*, 494 Mich 543, 557; 837 NW2d 244 (2013). "The parties to an account stated need not expressly assent to the sum due, as there are instances when assent may be inferred from a party's inaction[.]" *Id*. at 558. Defendants alleged that they sent an account to plaintiff for monies due and, because plaintiff failed to object, the accounting became an "account stated." The trial court found that there was no written account stated that was accepted by the debtor, but it did not address whether plaintiff's assent could be inferred. Under the above caselaw, there was arguable legal merit to defendants' claim, even though it was rejected by the trial court.

Defendants' claim to quiet title and for declaratory relief alleged that plaintiff lost any title to Units 1 through 14 because defendants' deeds were recorded before plaintiff recorded notice of its interest. The trial court rejected this claim on the basis that the race-notice statute, MCL 565.29, applies to conveyances and there was no conveyance in this case because "Units 1 through 14 were converted to common elements by operation of law." The trial court additionally found that defendants were not subsequent purchasers in good faith because they knew, or should have known, of the effect of the law on "need not be built" units, which were identified in the Master Deed. As noted, plaintiff argues on appeal that sanctions should have been imposed because this issue was already decided in the trial court's orders entered on February 10, 2017, and March 15, 2017. The race-notice issue, however, was not previously decided by the trial court.[17] As defendants argue, although the trial court found that plaintiff had title to former Units 1 through 14 and defendants' rights ceased by at least 2012, defendants' counterclaim related to events that occurred *after* the "reversion" by operation of law that occurred under MCL 559.167, as amended by 2002 PA 283. Therefore, the trial court did not abuse its discretion by declining to impose sanctions on this basis.

Last, defendants alleged that they obtained title to former Units 1 through 14 by adverse possession. As stated by this Court in *Waisanen v Superior Twp*, 305 Mich App 719, 731; 854 NW2d 213 (2014):

> A claim of adverse possession requires clear and cogent proof that possession of the disputed property has been actual, visible, open, notorious, exclusive, continuous, and uninterrupted for the statutory period. The use of the property must be hostile, that is without permission and in a manner that is inconsistent with the rights of the true owner. The statutory period of limitations for adverse possession is 15 years. [Quotation marks and citation omitted.]

Defendants alleged facts in support of each of these elements, asserting that a for sale sign was placed on the property, the real estate efforts were open and obvious, plaintiff was on notice of the 2004 transfer to Vistal Cothery, LLC, and did not object, defendants and their predecessors paid taxes on the property and openly surveyed, staked, and grubbed the property, defendants

---

[17] The trial court had only previously addressed the applicability of MCL 559.167(2) and MCL 559.143.

were in actual and constructive possession of the property, defendants and their predecessors held the property exclusively, uninterrupted, and continuously since before 1990, and defendants' claim was hostile and notorious. The trial court, however, found that defendants did not have exclusive use for 15 years, and they were given express permission to access and possess the land in 2007. On appeal, plaintiff argues that defendants' claim was frivolous because the payment of taxes is insufficient to establish adverse possession, defendants never actually possessed the property, and defendants were provided permission to enter the property in 2007. In response to plaintiff's motion for summary disposition on defendants' second amended countercomplaint, defendants argued that the 2007 purchase agreement was for the common elements only, not Units 1 through 14, and there were disputed questions of fact regarding the elements of adverse possession. In ruling on plaintiff's motion for fees, the trial court stated that even though defendants did not prevail on their claim of adverse possession, "that doesn't mean that there wasn't an argument to be made." Given the allegations and arguments made by defendants, the trial court did not clearly err by finding that defendants' claim was not frivolous.

## 2. MOTION TO STRIKE RESPONSE

Plaintiff also argues that the trial court erred by denying its request for attorney fees and costs because defendants violated MCR 2.114 by filing a motion to strike its response to defendants' motion for summary disposition. Plaintiff argues that MCR 2.115(B) only allows pleadings to be struck and a response to a motion is not a pleading. MCR 2.115(B) provides that "the court may strike from a pleading" and "may strike all or part of a pleading." MCR 2.110(A) defines "pleading" as a complaint, a cross-claim, a counterclaim, a third-party complaint, an answer to any of the above, or a reply. Accordingly, plaintiff is correct that a response cannot be struck. Although the label "motion to strike" may have been improper, the substance of defendants' argument—that the response improperly raised new issues—had arguable legal merit. Further, defendants' reply and motion to strike were combined in a single document, and defendants were essentially requesting that the court only consider the issue before it and consider the "new" issues at a later time. Accordingly, it is not clear that plaintiff was *required* to file a response to defendants' combined reply and "motion to strike." Again, although the form was improper, there was arguable legal merit to defendants' claim that the trial court should only consider the issue before it. Therefore, the trial court did not abuse its discretion by denying sanctions on this basis.

## 3. MOTION TO COMPEL DISCOVERY

Last, plaintiff argues that the trial court was required to grant its request for attorney fees and costs after the trial court denied defendants' motion to compel discovery. On December 15, 2016, defendant Vistal filed a motion to compel discovery, arguing that plaintiff failed to fully answer interrogatories and provide all of the documents requested. On January 6, 2017, plaintiff filed a response to defendants' motion to compel in which it argued that the requested information was not relevant, was in the possession of Vistal's predecessors, or was already provided. Plaintiff also requested attorney fees pursuant to MCR 2.313(A)(5)(b) for having to respond to a frivolous motion.

At the January 11, 2017 hearing, defendants argued that they were asking for documents going back to 1990 when the project started, but plaintiff only provided documents for the last 10 years because that was the time period for which it was requesting the payment of assessments. Defendants argued that they were seeking information regarding when plaintiff began assessing the units and whether there were, in fact, 31 units. Defendants also wanted to know how plaintiff came up with $200,000 in interest and late fees. The trial court subsequently denied Vistal's motion to compel in light of its ruling on Count I. On March 21, 2017, defendants filed a motion for reconsideration, which the trial court denied on April 13, 2017.

On appeal, plaintiff argues that the motion to compel was not related to the time period of the assessments requested, all of the requested information was provided, and the motion was intended to harass and increase the costs of the litigation. Defendants respond that the date of commencement of the 10-year period was a material issue and the requested information was relevant to other claims and defenses, including adverse possession. Defendant's original countercomplaint did not allege a claim of adverse possession.[18] Nonetheless, the trial court did not clearly err by finding that defendants' requests were not "inappropriate." Given defendants' arguments, there was a reasonable basis for defendants to believe that their requests would lead to relevant evidence. Because defendants' motion had arguable legal merit and a basis in fact, the trial court did not clearly err by finding that the motion was not frivolous.

As plaintiff argues, however, its request for fees was under MCR 2.313(A)(5)(b). MCR 2.313(A)(5) relates to awards for the expenses of motions, and Subsection (b) provides:

> If the motion is denied, the court shall, after opportunity for hearing, require the moving party or the attorney advising the motion, or both, to pay to the person who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust. [MCR 2.313(A)(5)(b).]

Thus, the trial court was required to order defendants to pay plaintiff's reasonable expenses incurred in opposing the motion, unless it found that the making of the motion was substantially justified or that other circumstances made an award of expenses unjust. At the hearing, the trial court stated:

> You know, Plaintiff argues that the motion to compel that was filed was inappropriate, but, you know, our discovery rules have built in procedures for dealing with overbroad requests. That was followed. There's nothing inappropriate about the decision that was made to -- to make those discovery requests.

---

[18] We note that defendants' claim of adverse possession was not filed until *after* the motion to compel was filed.

Although the trial court did not expressly find that the motion was "substantially justified" or that an award of expenses would be "unjust" under the circumstances, its finding that the motion was not "inappropriate" indicates that it so found. Therefore, the trial court did not abuse its discretion by denying the motion for fees and costs related to defendants' motion to compel discovery.

     Affirmed.

                                 /s/ Cynthia Diane Stephens
                                 /s/ Amy Ronayne Krause
                                 /s/ Patrick M. Meter